1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10                                  **EASTERN DIVISION**

11   **DIANNE Y. RODESTA,**                         )
                                                    )
12                  **Plaintiff,**                  )      **Case  No. EDCV 12-395-AJW**
                                                    )
13           **v.**                                 )      **MEMORANDUM OF DECISION**
                                                    )
14   **CAROLYN W. COLVIN,**                         )
     **Acting Commissioner of the Social**          )
15   **Security Administration,**                   )
                                                    )
16                  **Defendant.**                  )
                                                    )
17   _____       )

18          Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the

19   Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance

20   benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each

21   disputed issue.

22                                  **Administrative Proceedings**

23          Plaintiff, then aged 63, filed her application for benefits on March 20, 2009, alleging that she had

24   been disabled since March 15, 2008. [JS 2; Administrative Record ("AR") 95-96].  In a written hearing

25   decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the

26   "ALJ") found that plaintiff had severe impairments consisting of lumbar degenerative joint disease with

27   spondylosis and Reynaud's Syndrome, but that she retained the residual functional capacity ("RFC") to

28   perform a reduced range of light work. [AR 21].  Based on the testimony of a vocational expert, the ALJ

1  concluded that plaintiff's RFC did not preclude her from performing her past relevant work as a sales clerk.

2  Therefore, the ALJ found plaintiff not disabled at any time through the date of her decision. [AR 24, 25 ].

3  **Standard of Review**

4  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

5  evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

6  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

7  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

8  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

9  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is

10  required to review the record as a whole and to consider evidence detracting from the decision as well as

11  evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

12  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than

13  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

14  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

15  1999)).

16  **Discussion**

17  **Credibility finding**

18  Plaintiff contends that the ALJ improperly assessed her subjective symptom testimony. [See JS 3-9].

19  Once a disability claimant produces evidence of an underlying physical or mental impairment that

20  is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to

21  consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885

22  (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc); see also 20 C.F.R. §§

23  404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  Although the ALJ may

24  then disregard the subjective testimony she considers not credible, she must provide specific, convincing

25  reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d

26  at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's

27  subjective testimony without providing "clear and convincing reasons").  The ALJ's credibility findings

28  "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's

1  testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367

2  F.3d at 885.  If the ALJ's assessment of the claimant's testimony is reasonable and is supported by

3  substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857

4  (9th Cir. 2001).

5      In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented,"

6  including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and

7  intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity,

8  and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain

9  medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other

10  measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the

11  claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3);

12  see also Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *3 (clarifying the Commissioner's

13  policy regarding the evaluation of pain and other symptoms).  The ALJ also may employ "ordinary

14  techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for

15  truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and

16  the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's

17  subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or

18  friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec.

19  Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n. 5 (9th Cir. 1989).

20      Because there was no evidence of malingering, the ALJ was required to articulate specific, clear,

21  and convincing reasons to support his negative credibility finding.  The ALJ gave the following reasons for

22  rejecting the alleged severity of plaintiff's subjective symptoms: (1) during a January 2009 examination,

23  Dr. Hsu, plaintiff's treating physician at Kaiser Permanente, "noted pain out of proportion to exam" and

24  "also noted inconsistent signs and symptoms;" (2) plaintiff "declined epidural shots and indicated that she

25  wanted to be off work for one month because she could not afford the pain management classes;" and (3)

26  although plaintiff testified that she is being treated for depression and her concentration is not good due to

27  pain, an examination by a Kaiser Permanente psychologist who evaluated plaintiff for a pain management

28  program "reported unremarkable mental status examination findings." [AR 24].

1    The ALJ's first reason for rejecting plaintiff's subjective testimony is not clear and convincing.

2    Although it is true that Dr. Hsu noted "pain out of proportion to exam" as well as "inconsistent signs and

3    symptoms," Dr. Hsu nevertheless doubled the strength of plaintiff's Fentanyl skin patch[1] from 25 to 50

4    micrograms, ordered her off work for an additional month, and referred her for a consultation with a

5    neurosurgeon. [AR 251].  These actions demonstrate that Dr. Hsu found plaintiff's subjective complaints

6    of pain credible. [AR 251].  In addition, as noted by plaintiff, this reference by Dr. Hsu to disproportionate

7    pain is the only such notation in plaintiff's 169 pages of medical records. [JS 4].

8    The ALJ's second reason for doubting plaintiff's veracity, that she refused epidural shots and stated

9    that she could not afford pain management classes, is also not clear and convincing.  "[A]lthough a

10   conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper

11   basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more

12   aggressive treatment." Carmickle v. Comm'r, Soc. Sec. Admin.  533 F.3d 1155, 1162 (9th Cir. 2008); see

13   also SSR 96-7 (noting that an ALJ "must not draw any inferences about an individual's symptoms and their

14   functional effects from a failure to seek or pursue regular medical treatment without first considering any

15   explanations that the individual may provide").  The record indicates that plaintiff refused epidural

16   injections because she feared adverse side effects. [AR 262]. See Carmickle, 533 F.3d at 1162 (finding that

17   the claimant's failure to take stronger pain medication because of fear of adverse side effects did not

18   undermine the claimant's credibility).  In addition, plaintiff's inability to afford pain management classes

19   does not adversely affect her credibility.  The denial of disability benefits cannot be based upon a claimant's

20   failure to obtain treatment where the claimant cannot afford treatment.[2] Orn v. Astrue, 495 F.3d 625, 638

21   (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

22   Moreover, when Dr. Hsu referred plaintiff to a neurosurgeon who prescribed pain management after

23

24   [1] Fentanyl skin patches are used to relieve moderate to severe pain that is expected to last for

25   some time, that does not go away, and that cannot be treated with other pain medications. U.S. Nat'l
     Library of Med. and Nat'l Inst. of Health, Medline Plus website, available at

26   http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601202.html (last visited July 2, 2013).

27   [2] The ALJ wrote that plaintiff "claimed that she could not afford to pay for the chronic pain
     management class," suggesting that he did not believe that aspect of her testimony either, but he did

28   not make a finding, or cite any evidence, regarding her ability to pay.

1   finding that her condition was not surgically correctable, plaintiff was admitted to the Kaiser Permanente

2   Integrated Pain Management Program and actively participated in it for several months.  Plaintiff told her

3   Kaiser Permanente providers that she continued to have chronic pain despite compliance with the program.

4   [See AR 250-338].

5          Finally, the ALJ determined that plaintiff was not credible because of alleged inconsistencies

6   between her testimony at the administrative hearing and a psychological evaluation administered by Clifford

7   Taylor, Ph.D. for purposes of evaluating plaintiff's suitability for admission to the pain management

8   program. The ALJ noted as follows:

9          The claimant testified that she is being treated for depression, and her concentration is not

10         good due to her pain (Testimony).  However, the evidence documented that, Dr. Taylor, the

11         psychologist who evaluated the claimant for the pain management program, reported

12         unremarkable mental status examination findings, noting that: the claimant was alert and

13         fully oriented; her mood and affect were essentially appropriate to the situation; there was

14         no evidence of abnormal thought processes; and speech was unremarkable [citing AR 262].

15         Thus, the undersigned finds the claimant's credibility is further diminished as a result of

16         these inconsistences.

17   [AR 24].  Viewing the record as a whole, plaintiff's testimony is not inconsistent with Dr. Taylor's mental

18   status examination of March 18, 2009.  Plaintiff testified at the administrative hearing that she is taking

19   medication for depression and that she has difficulty concentrating due to the combination of pain and

20   medication. [AR 84-85].  However, Dr. Taylor's mental status examination did not address whether plaintiff

21   had any difficulty concentrating.  Rather, Dr. Taylor merely observed that, at the time of the mental status

22   examination on March 18, 2009, plaintiff was generally alert and oriented and her mood and affect were

23   appropriate to the situation. [AR 262].  Furthermore, Dr. Taylor concluded that plaintiff's presentation was

24   consistent with the pain management program's criteria for "Level 2 chronic pain," and plaintiff was

25   admitted to the program. [AR 263-339].  Thus, it is clear from a review of the record that Dr. Taylor's

26   mental status examination is not a clear and convincing reason for rejecting plaintiff's subjective symptoms

27   testimony.

28         **Medical opinion evidence**

5

1    Plaintiff contends that in assessing her RFC, the ALJ improperly weighed the medical opinion

2    evidence. [See JS 10-17].

3    The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record,

4    for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating

5    or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial

6    evidence in the record.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);

7    Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

8    The ALJ stated that he gave the most weight to the opinion of treating physician Dr. Hsu, and that

9    Dr. Hsu's "[RFC] assessment was consistent with the objective medical evidence of record." [AR 22].

10   Specifically, the ALJ noted that Dr. Hsu placed claimant on "light duty" for 35 days in December 2008. The

11   ALJ credited that "light duty" assessment. [AR 23].

12   The record indicates that Dr. Hsu treated plaintiff from April 2008 through January 2009 and ordered

13   plaintiff "off work" from April 29, 2008 until approximately December 11, 2008, when she placed plaintiff

14   on "light duty" work for 35 days.  [AR 190, 207, 241, 244, 248].  In January 2009, however, Dr. Hsu

15   ordered plaintiff off work for an additional month, notwithstanding a finding that plaintiff's subjective pain

16   was out of proportion to examination findings.  At that time Dr. Hsu also doubled plaintiff's Fentanyl patch

17   dosage and referred her to a neurosurgeon, Dr. Everett.   In February 2009, based on his examination and

18   "significant" lumbosacral spine x-ray findings, Dr. Everett diagnosed lumbar spondylosis without

19   myelopathy.  He opined that plaintiff's symptoms were not correctable with surgery and prescribed the pain

20   management program. [AR 252-259].

21   Dr. Everett's opinion is consistent with the opinion of Dr. Sircable, who treated plaintiff at the pain

22   management program.  Dr. Sircable signed a letter dated January 21, 2010 stating that plaintiff had chronic,

23   degenerative pain that was not expected to go away.  She opined that plaintiff could not sit or stand for more

24   than 20-30 minutes at a time and could not lift or bend.  She said that plaintiff had completed a pain

25   management program utilizing interventions other than medication and also was on "chronic daily opiate

26   therapy." [AR 364].

27   Given that Dr. Hsu only placed plaintiff on "light duty" for about a month and ordered her "off

28   work" for the other nine months or so she treated plaintiff, the ALJ's reliance on Dr. Hsu's "well supported"

1   opinion to find plaintiff capable of "light work" was not legitimate, nor was it consistent with the other

2   treating source opinion evidence in the record. Furthermore, Dr. Hsu did not define what she meant by

3   "light duty," and the record does not permit a reasonable inference that "light duty" is equivalent to the

4   Commissioner's definition of light work. Therefore, substantial evidence does not support the ALJ's RFC

5   finding.

6               **Remedy**

7        The choice whether to reverse and remand for further administrative proceedings, or to reverse and

8   simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

9   Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of

10  benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S.  1038

11  (2000).  The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand

12  to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura,

13  537 U.S. 12, 16 (2002) (per curiam)).   A district court, however,

14          should credit evidence that was rejected during the administrative process and remand for

15          an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for

16          rejecting the evidence; (2) there are no outstanding issues that must be resolved before a

17          determination of disability can be made; and (3) it is clear from the record that the ALJ

18          would be required to find the claimant disabled were such evidence credited.

19  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test

20  "does not obscure the more general rule that the decision whether to remand for further proceedings turns

21  upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593

22  (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record

23  would be useful").

24       Since it remains to be resolved whether plaintiff could perform alternative work if the ALJ properly

25  evaluated her subjective testimony and the medical opinion evidence of record, the proper remedy in this

26  case is reversal and remand for further administrative proceedings to permit the ALJ to provide plaintiff

27  with a supplemental hearing and to issue a new decision with appropriate findings at each step of the

28

1 sequential evaluation procedure.[3]

2 **Conclusion**

3 For the reasons stated above, the Commissioner's decision is **reversed**, and the case is **remanded**

4 for further administrative proceedings consistent with this memorandum of decision.

5

6 **IT IS SO ORDERED.**

7

8 July 29, 2013

9

10 _____
ANDREW J. WISTRICH

11 United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 [3] This disposition makes it unnecessary to consider plaintiff's remaining contention that the ALJ erred at step five, and that "remand is necessary to re-evaluate plaintiff's ability to perform any

28 work." [JS 19].